# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael Preston Estes, | ) | C/A No.: 1:16-3343-JMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Nancy A. Berryhill, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.    Relevant Background

A.    Procedural History

On September 12, 2012, Plaintiff protectively filed an application for DIB[1] in which he alleged his disability began on March 15, 2010. Tr. at 235–36. His application was denied initially and upon reconsideration. Tr. at 190–93 and 195–200. On February 9, 2015, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Alice Jordan. Tr. at 123–66 (Hr'g Tr.). The ALJ issued an unfavorable decision on May 15, 2015, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 106–22. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–7. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on October 10, 2016. [ECF No. 1].

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 43 years old at the time of the hearing. Tr. at 129. He completed the tenth grade. Tr. at 131. His past relevant work ("PRW") was as a drawing machine operator and a general maintenance worker. Tr. at 161. He alleges he has been unable to work since March 15, 2010. Tr. at 235.

---

[1] Plaintiff subsequently filed a claim for SSI on April 2, 2014, that was escalated to the hearing level. Tr. at 249–57.

2. Medical History

a. Evidence Presented to ALJ

On October 23, 2006, Plaintiff presented to Richard C. Cutchin, M.D. ("Dr. Cutchin"), for a seven-month history of neck and left shoulder pain. Tr. at 588. He complained of numbness in the fingers of his left hand and a burning sensation between his shoulder blades and in his neck. *Id.* He reported having sustained a neck fracture in 1994. *Id.* Dr. Cutchin observed tenderness in Plaintiff's posterior neck and abnormal sensation over his left fingertips and forearm. Tr. at 588. He refilled Plaintiff's prescription for Lortab, prescribed Tramadol, and referred him for an MRI of his cervical spine. *Id.*

On October 26, 2006, magnetic resonance imaging ("MRI") of Plaintiff's cervical spine showed a C5-6 paracentral disc and osteophyte protrusion with probable impingement on the left C6 nerve root. Tr. at 356.

Plaintiff presented to John K. Johnson, M.D. ("Dr. Johnson"), for a neurosurgical consultation on December 19, 2006. Tr. at 353–55. He described a burning pain in the midline of his posterior inferior neck that radiated throughout his left upper extremity. Tr. at 353. He indicated his pain was exacerbated by lifting his right shoulder overhead and was relieved by nothing. *Id.* Dr. Johnson observed Plaintiff to be tender in his left trapezius; to have full and asymptomatic active range of motion ("ROM") of his cervical spine to 50 degrees and asymptomatic extension restricted to 10 degrees. *Id.* He indicated Plaintiff had asymmetrical hypoesthesia over his left thumb, index finger, middle finger, and ring finger. *Id.* He noted Spurling's maneuver was positive with reproduction of pain

into Plaintiff's left upper extremity. *Id.* Dr. Johnson informed Plaintiff that he would be unable to administer epidural steroid injections because of Plaintiff's diabetes. *Id.* He apprised Plaintiff of his options, which included living with the problem, attending physical therapy, or obtaining surgical intervention. Tr. at 355. Plaintiff elected to proceed with surgery. *Id.* Dr. Johnson performed C5-6 anterior cervical discectomy and allograft fusion with plating and fluoroscopy on January 5, 2007. Tr. at 350–51.

On September 13, 2009, Plaintiff presented to the emergency room ("ER") at Upstate Carolina Medical Center ("UCMC") with neck pain. Tr. at 409. He endorsed positive right-sided motor weakness and right arm paresthesias. *Id.* X-rays showed no acute abnormality. Tr. at 408. The attending physician observed Plaintiff to have no tenderness; normal joint ROM; no swelling or deformities; negative cyanosis, clubbing, and edema; and no motor or sensory deficits. Tr. at 410. He diagnosed cervical radiculopathy and acute cervical strain. *Id.*

On November 20, 2009, Plaintiff presented to the ER at UCMC for a right elbow abscess. Tr. at 398. The attending physician observed Plaintiff to have a one-centimeter raised area that was hard, tender, and surrounded by erythema. Tr. at 399. He assessed an abscess and uncontrolled diabetes mellitus. *Id.*

Plaintiff presented to the ER at UCMC on July 11, 2010, with lower abdominal pain. Tr. at 395. A computed tomography ("CT") scan of Plaintiff's abdomen indicated findings consistent with acute appendicitis. Tr. at 392.

On August 10, 2010, Plaintiff presented to the ER at UCMC because he had been out of insulin for three weeks and his appendectomy incision was slightly red. Tr. at 387.

4

The attending physician noted Plaintiff's incision was healing, but had mild erythema and warmth. Tr. at 388. Plaintiff's blood sugar and white blood cell count were elevated. *Id.* The physician assessed an infection at the surgical incision site, insulin-dependent diabetes mellitus, and medication noncompliance. *Id.*

On September 22, 2010, Plaintiff presented to the ER at UCMC with hyperglycemia, after having run out of insulin. Tr. at 447. His blood glucose was elevated at 576. Tr. at 451. Plaintiff "stormed out of the ER w/o being discharged." Tr. at 448. The attending physician noted that hospital staff had made phone calls in an attempt to assist Plaintiff with his insulin and that he was unsure what had upset Plaintiff. *Id.*

Plaintiff presented to the ER at UCMC on March 23, 2011, after having sustained an injury to his right groin. Tr. at 445. The attending physician observed a two-centimeter abscess in Plaintiff's right groin area, but Plaintiff refused to allow the physician to open the wound. Tr. at 446. He prescribed Bactrim and Lortab. *Id.*

Plaintiff presented to UCMC on April 19, 2011, with hyperglycemia. Tr. at 380. He reported that he had been out of insulin for three weeks and was having trouble with increased pain and burning in his legs. *Id.* A physical examination was normal and showed Plaintiff to have normal joint ROM; no swelling or deformities; no tenderness to palpation; no clubbing or edema; and no motor or sensory deficits. Tr. at 381. However, Plaintiff's laboratory test results were abnormal. *Id.* The attending physician diagnosed uncontrolled diabetes secondary to noncompliance, acute hyperglycemia, hypokalemia, and diabetic neuropathy. *Id.*

On October 24, 2011, Plaintiff presented to the ER at UCMC with an abscess. Tr. at 377. The attending physician observed Plaintiff to have a three-centimeter raised area on his right axilla that was erythematous, hard, tender, and warm. Tr. at 378. He diagnosed an early abscess and prescribed Tramadol and an antibiotic medication. *Id.*

Plaintiff visited the ER at UCMC on December 14, 2011, with a complaint of neck pain. Tr. at 374. X-rays of Plaintiff's cervical spine revealed stable post-operative changes at C5-6 and degenerative findings and C4-5 and C6-7. Tr. at 373. The attending physician observed Plaintiff to have full ROM of his neck, but Plaintiff endorsed posterior tenderness to palpation. Tr. at 375. The physician diagnosed an acute traumatic cervical strain. *Id.*

Plaintiff visited the ER at UCMC on March 3, 2012, for an aching and burning pain in his left little finger. Tr. at 368. The attending physician observed a raised area with moderate erythema and mild lymphangitis that was consistent with an abscess. Tr. at 369. He diagnosed cellulitis and early abscess. *Id.*

Plaintiff presented to the ER at UCMC on April 20, 2012, with a complaint of lower abdominal pain and rectal bleeding. Tr. at 365. An abdominal CT scan was negative. Tr. at 361. The attending physician diagnosed neuropathy, uncontrolled diabetes mellitus, acute hyperglycemia, and gastroparesis diabeticorum. Tr. at 363.

Plaintiff presented to the ER at UCMC on July 24, 2012, with pain in his left middle fingernail. Tr. a 437. The attending physician observed Plaintiff to have a small amount of soft tissue swelling, erythema, and warmth at the radial nail fold. Tr. at 438.

He diagnosed paronychia and insulin-dependent diabetes mellitus and prescribed Bactrim and Norco. *Id.*

On July 26, 2012, Plaintiff presented to the ER at UCMC after having overdosed on pain medication and sustained a fall. Tr. at 425. Police alleged that Plaintiff had drafted a suicide note. *Id.* However, Plaintiff denied feeling suicidal. Tr. at 426. His blood glucose was elevated at 256 and his urine toxicology screen was positive for amphetamines, cannabinoids, benzodiazepines, and opiates. *Id.* The attending physician diagnosed acute depression. *Id.* He recommended Plaintiff be discharged to his home to follow up with a mental health center on an outpatient basis. Tr. at 427.

Plaintiff presented to the ER at UCMC on December 12, 2012, after having sustained an injury to his lower leg. Tr. at 421. He indicated he had been struck by a log while at work. *Id.* The attending physician observed Plaintiff to have a two-centimeter superficial avulsion to his distal anterior left leg, but to have full ROM in all his joints. Tr. at 422. He diagnosed a lower leg contusion and a lower leg abrasion. *Id.*

Plaintiff presented to Gaffney Medical Center ("GMC") on June 2, 2013, for a burning and stinging pain in his feet and hands. Tr. at 536. The attending physician noted no abnormalities on physical examination. Tr. at 537. He diagnosed diabetic neuropathy and prescribed Tramadol. *Id.*

Plaintiff presented to the ER at GMC on January 8, 2014, with an abscess on his left jaw. Tr. at 453. The attending physician observed a two-centimeter raised area that was consistent with an early abscess. Tr. at 454.

On April 21, 2014, Plaintiff presented to GMC with swelling, redness, and pain in his left lower extremity. Tr. at 526. He indicated he had completed prescriptions for Bactrim and Keflex, but had obtained no relief. *Id.* The attending physician observed Plaintiff to have moderate erythema, moderate soft tissue swelling, severe tenderness to palpation, and moderate warmth. Tr. at 528. Plaintiff demonstrated decreased knee ROM secondary to pain and swelling. *Id.* The attending physician indicated Plaintiff's left lower leg appeared to be improved since April 7, 2014, and had less swelling and less intense erythema. Tr. at 528–29. Plaintiff's blood glucose was significantly elevated at 335. Tr. at 529. The physician diagnosed recurrent Methicillin-resistant Staphylococcus aureus ("MRSA") abscess and cellulitis. *Id.* He prescribed Doxycycline 100 milligrams, Clindamycin 300 milligrams, Diclofenac 75 milligrams, and Tramadol 50 milligrams and instructed Plaintiff to apply ice and to alternate between taking Advil and Tylenol for additional pain relief. Tr. at 529–30.

Plaintiff presented to the ER at GMC on May 8, 2014, after having sustained a fall from his porch while intoxicated. Tr. at 508. He complained of pain in his right ribs and right eye. *Id.* The attending physician observed Plaintiff to have a small bruise and a small amount of soft tissue swelling on his right eyelid and moderate right-sided chest wall tenderness. Tr. at 510. The remainder of the physical examination was normal, and x-rays were negative for rib fractures. *Id.* The attending physician diagnosed a fall, a chest wall contusion, a right eye contusion, and insulin-dependent diabetes mellitus. *Id.* He prescribed 20 Naprosyn tablets for pain. Tr. at 511.

Plaintiff presented to Donald Todd Morgan, M.D. ("Dr. Morgan"), for diabetes-related symptoms on July 30, 2014. Tr. at 472. Dr. Morgan observed Plaintiff's blood pressure to be elevated at 156/98, but he noted no other abnormalities on physical examination. Tr. at 473. He prescribed 20 milligrams of Lisinopril for hypertension. Tr. at 474.

Plaintiff followed up with Dr. Morgan for diabetes management on August 6, 2014. Tr. at 469. Dr. Morgan noted no abnormalities on physical examination. Tr. at 470. Plaintiff's hemoglobin A1c was greater than 14%.[2] Tr. at 482. Dr. Morgan instructed Plaintiff to use 35 units of Levemir insulin twice a day. Tr. at 471.

On September 2, 2014, Plaintiff requested pain medication during a diabetes follow up visit. Tr. at 467. He complained of myalgias, back pain, and joint pain and indicated he had recently broken his foot. *Id.* Dr. Morgan noted that Plaintiff's blood sugar levels had decreased from the 400s to the 200s. *Id.* However, Plaintiff's hemoglobin A1c remained significantly elevated at 10.5%. Tr. at 476. Dr. Morgan prescribed 50 milligrams of Tramadol for pain to be taken every six hours as needed. Tr. at 468. He instructed Plaintiff to take 40 units of Levemir insulin twice a day and to take 40 milligrams of Simvastatin at bedtime. *Id.*

Plaintiff presented to orthopedic surgeon Frank F. Phillips, M.D. ("Dr. Phillips"), on September 9, 2014. Tr. at 464. Dr. Phillips noted that Plaintiff had fractured his right foot on August 28. Tr. at 630. He observed Plaintiff to ambulate with an antalgic gait and to have tenderness and moderate swelling in his right foot. Tr. at 465. He placed

---

[2] The normal range for hemoglobin A1c is 3.0–6.0%. Tr. at 482.

Plaintiff's foot in a walker boot, prescribed Norco 7.5-325 milligrams, and instructed Plaintiff to follow up in three weeks. *Id.*

Plaintiff followed up with Dr. Phillips on October 1, 2014. Tr. at 554. He continued to report pain around his toes. Tr. at 555. Dr. Phillips observed tenderness and mild swelling in Plaintiff's right second distal metatarsal, but no deformity. Tr. at 556. An x-ray indicated Plaintiff's fracture was healing. *Id.* Dr. Phillips ordered a new fracture shoe. *Id.*

On October 22, 2014, Plaintiff presented to Dr. Morgan for a lesion on his right buttock. Tr. at 550. Dr. Morgan noted firm swelling. Tr. at 552. He diagnosed an abscess and prescribed Septra DS. *Id.*

Plaintiff followed up with Dr. Morgan on November 3, 2014. Tr. at 548. Dr. Morgan noted that Plaintiff's lesion had resolved, despite his failure to fill the prescription for an antibiotic medication. Tr. at 549.

On November 10, 2014, Plaintiff followed up with Dr. Morgan for back pain and numbness in the back of his right leg and hip. Tr. at 545. Dr. Morgan observed Plaintiff to be tender at the right L5 level, but to have no other abnormalities on examination. Tr. at 546. He prescribed Norco 7.5-325 milligrams and Benicar 40 milligrams. Tr. at 547.

On January 5, 2015, Plaintiff reported abdominal pain and nausea that had presented each morning for the prior three-week period. Tr. at 609. Dr. Morgan observed no abnormalities on physical examination. Tr. at 609–10. He referred Plaintiff for lab tests. Tr. at 610.

On January 14, 2015, Plaintiff complained of constant bilateral distal lower extremity pain and paresthesias that were most prominent on the plantar and dorsal surfaces of his feet. Tr. at 562. He reported both cold and burning sensations. *Id.* He complained of bilateral leg weakness and difficulty walking, sleeping, and standing. *Id.* Alfred R. Moss, M.D. ("Dr. Moss"), administered nerve conduction velocity ("NCV") and electromyography ("EMG") studies that showed moderate-to-severe sensory and motor polyneuropathy of the nerves in Plaintiff's bilateral feet and subacute left lumbar radiculitis. *Id.*

On January 28, 2015, Plaintiff complained of constant paresthesias and burning in his bilateral wrists and hands. Tr. at 568. He reported severe cervical pain that radiated into his bilateral upper extremities. *Id.* He endorsed difficulty sleeping and grasping objects. *Id.* Dr. Moss administered NCV and EMG tests that showed Plaintiff to have moderate motor and sensory polyneuropathy of the nerves in his bilateral hands and wrists. *Id.* He also had +1 fibrillation potential in his right biceps muscle, which potentially suggested a subacute right C5-6 radiculopathy. *Id.*

Plaintiff followed up with Dr. Morgan on February 6, 2015, for a skin problem on his right ankle and to discuss NCV and EMG test results. Tr. at 613. He reported back pain, joint pain, and myalgia. Tr. at 614. Dr. Morgan diagnosed neuropathy. *Id.*

b.    Evidence Submitted to Appeals Council

The record contains a statement signed by Dr. Morgan and dated July 21, 2015. Tr. at 622. Dr. Morgan indicated Plaintiff had consistently complained of neuropathic-type pain in his hands and lower extremities since he started treating him in July 2014. *Id.*

He indicated that based on the NCV test results and Plaintiff's complaints over time, he felt that Plaintiff "would be limited to a sit down job from the neuropathy in his feet" and "would not be able to use his hands any [ ] more than occasionally." He explained that he understood "occasionally" to mean for no more than one-third of an eight-hour workday. *Id.* However, he stated he had not thoroughly examined Plaintiff's neuropathy during treatment visits and was basing his assessment on the NCV test results and Plaintiff's complaints. *Id.*

On October 27, 2015, Plaintiff reported pain in the plantar surface of his right foot, after having sustained a fall. Tr. at 10. X-rays showed evidence of a remote proximal fifth phalanx fracture, but no acute findings. *Id.*

Plaintiff was hospitalized at Mary Black Health System Gaffney on December 9, 2015, for difficulty with weight bearing, pain, and swelling in his right foot. Tr. at 25. X-rays of Plaintiff's right foot indicated a comminuted fracture of the first cuneiform with mild callus formation. Tr. at 32. The report indicates the fracture was not visible on prior x-rays. *Id.* Plaintiff's discharge diagnoses included Charcot foot; occult fracture with a subacute history of trauma; history of kidney stones; and peripheral neuropathy.[3] Tr. at 25.

---

[3] The undersigned notes that records from Plaintiff's hospitalization state he "lives with his wife and remodels homes." Tr. at 29.

C.     The Administrative Proceedings

1.     The Administrative Hearing

a.     Plaintiff's Testimony

At the hearing on February 9, 2015, Plaintiff testified that he last worked in March 2010. Tr. at 132. He stated he collected unemployment benefits for approximately nine months and searched for work until "[s]ome [] time in 2011" when his health started to decline. Tr. at 132–33.

Plaintiff stated his neuropathy had worsened during the prior year. Tr. at 141. He indicated he experienced numbness, tingling, burning, and pain in his feet, hands, and back. *Id.* He stated his neuropathy was worse on his left side and that his most severe pain was in his feet and legs. Tr. at 146 and 149. He stated he had been hospitalized for nine days for MRSA and that it had caused severe damage to his left leg. Tr. at 147–48. He testified that he had diabetic neuropathy. Tr. at 148. He stated he was required to take insulin four times a day. Tr. at 153. He indicated he had been diagnosed with left carpal tunnel syndrome. Tr. at 149. He denied having mental problems and indicated he had no side effects from his medications. Tr. at 154.

Plaintiff testified that he had sustained a fracture to his neck when a tree fell on him in 2010. Tr. at 151. He stated he had degenerative disc disease at multiple levels. Tr. at 152. He denied having restricted ROM in his neck. *Id.* He stated his doctor had instructed him not to lift over 30 to 40 pounds. *Id.* He indicated it sometimes hurt to hold up his head. *Id.*

Plaintiff estimated he could sit for 30 to 40 minutes at a time. Tr. at 154. He stated he could stand for 60 to 80 minutes. *Id.* He indicated he could walk for a couple of hours. *Id.* He stated his doctors had advised him not to bend over, but to squat down instead. Tr. at 155. He indicated he would likely be able to pick up a gallon of milk with his right hand, but would have difficulty lifting it with his left hand. *Id.* He claimed he would need to walk around for 15 to 20 minutes after he sat for 30 to 40 minutes. *Id.*

Plaintiff testified he lived with his wife and his 20-year-old and 16-year-old sons. Tr. at 129–30. He stated his 20-year-old son had been diagnosed with autism and was non-verbal. Tr. at 140–41. He indicated he stayed at home most of the time. Tr. at 143. He stated his mother, father, and sister sometimes visited him. *Id.* He estimated he watched television for three to five hours per day. *Id.* He stated he occasionally read the local newspaper. *Id.*

Plaintiff testified that he had previously assisted his wife with cooking, doing laundry, and vacuuming, but had stopped helping six to seven months prior because of difficulty picking up items. *Id.* He indicated he occasionally rinsed dishes, changed the sheets on the bed, and cleaned the kitchen and bathroom. Tr. at 144. He stated he would shop for groceries with his wife. *Id.* He indicated he was no longer able to maintain his yard. *Id.* He testified his driver's license had been suspended when he was 17 years old and that he had never attempted to have it reinstated. Tr. at 145. He indicated he sometimes prepared a campfire with his wife's help because his son enjoyed sitting around it. *Id.* He stated he was able to care for his personal hygiene. *Id.* He denied smoking, drinking, or using any drugs that were not prescribed. Tr. at 146.

b.    Vocational Expert Testimony

Vocational Expert ("VE") Robert E. Brabham, Jr., reviewed the record and testified at the hearing. Tr. at 160–66. The VE categorized Plaintiff's PRW as a drawing machine operator, *Dictionary of Occupational Titles* ("*DOT*") number 680.685-034, as requiring medium exertion and having a specific vocational preparation ("SVP") of three and a general maintenance worker, *DOT* number 899.381-010, as requiring medium exertion and having an SVP of seven. Tr. at 161. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform light work with the following limitations: lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for up to six hours each during an eight-hour workday with normal breaks; change positions at the work station once per hour; no climbing of ladders; occasionally climbing, stooping, crouching, kneeling, and crawling; frequently engaging in fine and gross manipulation with the left hand; and must avoid concentrated exposure to vibration and hazards. Tr. at 161–62. The VE testified that the hypothetical individual would be unable to perform Plaintiff's PRW. Tr. at 161. The ALJ asked whether there were any other jobs in the regional or national economy that the hypothetical person could perform. *Id.* The VE identified light jobs with an SVP of two as a production inspector, *DOT* number 222.687-042, with 9,000 positions in the local economy and 345,000 positions in the national economy; a parking lot attendant, *DOT* number 915.473-010, with 1,000 positions in the local economy and 37,000 positions in the national economy; and a garment folder, *DOT* number 789.687-066, with 1,000 positions in the local economy and 39,000 positions in the national economy. Tr. at 163–64.

The ALJ asked the VE to consider the limitations indicated in the prior question, but to further assume the individual would be able to perform no overhead reaching. Tr. at 164. She asked if the additional limitation would affect the jobs identified in response to the prior question. *Id.* The VE indicated it would not. *Id.*

Plaintiff's attorney asked the VE to consider an individual of Plaintiff's vocational profile who was limited to sedentary work and would be unable to use his bilateral upper extremities more than occasionally to engage in fine or gross manipulation. Tr. at 164–65. She asked if there would be any jobs available to such an individual. Tr. at 165. The VE stated there would be no jobs. *Id.*

Plaintiff's attorney asked the VE to consider an individual of Plaintiff's vocational profile who would suffer interruptions to concentration sufficient to frequently interrupt tasks throughout the workday. *Id.* She asked if the individual would be able to perform any jobs. *Id.* The VE testified that no jobs would be available. *Id.*

Plaintiff's attorney asked the VE to consider an individual of Plaintiff's vocational profile who would need to be away from the work station for greater than an hour during non-break periods of the workday. *Id.* She asked if such a limitation would allow for gainful employment. *Id.* The VE stated that it would not. *Id.*

Plaintiff's attorney asked the VE to consider an individual of Plaintiff's vocational profile who would miss more than three days of work per month. *Id.* She asked if there would be any employment for such an individual. Tr. at 165–66. The VE responded that the number of absences would be considered excessive and would be inconsistent with gainful employment. Tr. at 166.

2.    The ALJ's Findings

In her decision dated May 15, 2015, the ALJ made the following findings of fact

and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security
      Act through June 30, 2012.
2.    The claimant has not engaged in substantial gainful activity since March
      15, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et
      seq.*).
3.    The claimant has the following severe impairments: degenerative disc
      disease and radiculopathy, carpal tunnel syndrome of the left hand, and
      neuropathy (20 CFR 404.1520(c) and 416.920(c)).
4.    The claimant does not have an impairment or combination of impairments
      that meets or medically equals the severity of one of the listed impairments
      in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),
      404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
5.    After careful consideration of the entire record, the undersigned finds that
      the claimant has the residual functional capacity to perform light work as
      defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could
      sit, stand, and/or walk for six hours in an eight-hour workday. He would
      need to change positions up to once every hour without leaving the work
      station. The claimant must not climb ladders, ropes, or scaffolds. He could
      occasionally climb, stoop, crawl, kneel, and crouch. He could frequently
      perform fine and gross manipulations with his left hand. The claimant must
      avoid concentrated exposure to vibrations and workplace hazards. The
      claimant is also unable to reach overhead.
6.    The claimant is unable to perform any past relevant work (20 CFR
      404.1565 and 416.965).
7.    The claimant was born on May 22, 1972 and was 37 years old, which is
      defined as a younger individual age 18–49, on the alleged disability onset
      date (20 CFR 404.1563 and 416.963).
8.    The claimant has at least a high school education and is able to
      communicate in English (20 CFR 404.1564 and 416.964).
9.    Transferability of job skills is not material to the determination of disability
      because using the Medical-Vocational Rules as a framework supports a
      finding that the claimant is "not disabled," whether or not the claimant has
      transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P,
      Appendix 2).
10.   Considering the claimant's age, education, work experience, and residual
      functional capacity, there are jobs that exist in significant numbers in the

national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 111–17.

## II.    Discussion

Plaintiff alleges the Commissioner erred in improperly rejecting opinions from his treating physicians. The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in her decision.

### A.    Legal Framework

#### 1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1) whether the claimant is engaged

18

in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW;[5] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520 and § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b) and § 416.920(a), (b); Social Security

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525 and § 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii) and § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or are "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526 and § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[5] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h) and § 416.920(h).

Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v.*

*Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

ALJs must carefully consider medical source opinions of record. SSR 96-5p, 1996 WL 374183, at *2 (1996). The regulations direct that they accord controlling weight to treating physicians' opinions that are well-supported by medically-acceptable clinical and laboratory diagnostic techniques and that are not inconsistent with the other substantial evidence of record. 20 C.F.R. § 404.1527(c)(2) and § 416.927(c)(2). If a treating source's opinion is not well-supported by medically-acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence of record, the ALJ may decline to give it controlling weight. SSR 96-2p, 1996 WL 374188, at *2 (1996). Even if the ALJ determines the treating source's opinion is not entitled to controlling weight, she must proceed to weigh it, along with all other medical opinions of record,

based on the factors in 20 C.F.R. § 404.1527(c) and § 416.927(c), which include (1) the examining relationship between the claimant and the medical provider; (2) the treatment relationship between the claimant and the medical provider, including the length of the treatment relationship and frequency of treatment and the nature and extent of the treatment relationship; (3) the supportability of the medical provider's opinion in his or her own treatment records; (4) the consistency of the medical opinion with other evidence in the record; and (5) the specialization of the medical provider offering the opinion. *Johnson*, 434 F.3d at 654; SSR 96-2p, 1996 WL 374188, at *4 (1996).

The regulations provide guidance in weighing the relevant factors in 20 C.F.R. § 404.1527(c) and § 416.927(c). ALJs should give some deference to a treating source's opinion, even if it is not well-supported by medically-acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2) and § 416.927(c)(2); *see also* SSR 96-2p, 1996 WL 374188, at *3 (1996). Nevertheless, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001), citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). Medical opinions that are adequately explained by the medical source and supported by medical signs and laboratory findings should be accorded greater weight than uncorroborated opinions. 20 C.F.R. § 404.1527(c)(3) and § 416.927(c)(3). "[T]he more consistent an opinion is with the record as a whole, the more weight the Commissioner will give it." *Stanley v. Barnhart*, 116 F. App'x 427, 429 (4th Cir. 2004),

citing 20 C.F.R. § 416.927(d) (2004).[6] Finally, medical opinions from specialists regarding medical issues related to their particular areas of specialty should carry greater weight than opinions from physicians regarding impairments outside their areas of specialty. 20 C.F.R. § 404.1527(c)(5) and § 416.927(c)(5).

The ALJ must "always give good reasons" for the weight she accords to the opinion of the claimant's treating medical source. 20 C.F.R. § 404.1527(c)(2) and § 416.927(c)(2). If the ALJ issues a decision that is not fully favorable, "the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." SSR 96-2p, 1996 WL 374188, at *5 (1996). This court should not disturb an ALJ's determination as to the weight to be assigned to a medical source opinion "absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has not given good reason for the weight afforded a particular opinion." *Craft v. Apfel*, 164 F.3d 624 (Table), 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam).

### 1. Dr. Morgan's Opinion

Dr. Morgan completed a questionnaire on February 6, 2015. Tr. at 575. In response to a question that asked if Plaintiff could engage in anything more than

---

[6] The version of 20 C.F.R. § 416.927 effective March 26, 2012, redesignated 20 C.F.R. § 416.927(d)(4) as 20 C.F.R. § 416.927(c)(4).

sedentary work, Dr. Morgan wrote "[n]o" and indicated that Plaintiff was "unable to [l]ift, bend or stoop." *Id.* He stated Plaintiff's carpal tunnel syndrome would limit his ability to engage in gross and fine handling and manipulation of objects. *Id.* He noted his responses were based on nerve studies that indicated diagnoses of carpal tunnel syndrome and lower extremity neuropathy. *Id.* He stated Plaintiff had been impaired as described in his statement for eight months. *Id.*

Plaintiff argues the ALJ only provided a "general conclusory statement of inconsistency" and did not satisfy her duty to provide a specific reason for her decision to give Dr. Morgan's opinion partial weight. [ECF No. 11 at 14–15]. He maintains that normal findings with respect to his spine do not refute Dr. Morgan's opinion regarding the limitations imposed by lower extremity neuropathy and carpal tunnel syndrome. *Id.* at 15. He further contends that Dr. Morgan's opinion was consistent with that of Dr. Moss. *Id.* at 16.

The Commissioner argues that the medical evidence of record supported the ALJ's decision to give partial weight to Dr. Morgan's opinion that Plaintiff was unable to lift, bend, or stoop. [ECF No. 12 at 11–12].

The ALJ found that Dr. Morgan's indication that Plaintiff was "unable to lift, bend, or stoop" was "inconsistent with the claimant's medical record, which indicates that physical examinations of the claimant's spine were generally normal." Tr. at 115. Thus, she gave only "partial weight" to Dr. Morgan's opinion. *See id.*

The ALJ's evaluation of Dr. Morgan's opinion is deficient under the provisions of 20 C.F.R. § 404.1527(c) and § 416.927(c). Her decision reflects no consideration of the

examining and treating relationship between Plaintiff and Dr. Morgan. *See* Tr. at 462–503 (reflecting treatment visits on July 30, August 6, and September 2, 2014), 544–60 (showing examination notes for October 22, November 3, and November 10, 2014), and 609–20 (including notes from visits on January 5, and February 6, 2015). The ALJ considered the support of Dr. Morgan's opinion to the extent that she found that the weight of the opinion was to be reduced based on normal examinations of Plaintiff's lumbar spine that were reflected in the treatment records. *See* Tr. at 115. However, she did not consider whether Dr. Morgan's findings supported his opinions that Plaintiff's ability to perform work above the sedentary exertional level would be impeded by lower extremity neuropathy and his ability to engage in gross and fine handling and manipulation of objects would be limited by carpal tunnel syndrome.[7] *See* Tr. at 575. The ALJ also failed to consider the consistency of Dr. Morgan's opinion with the other evidence of record, which included opinions from Dr. Moss that suggested the same limitations. *See* Tr. at 561 (stating Plaintiff should limit fine and gross manipulation to occasional during an eight-hour workday) and 621 (indicating Plaintiff was limited to sedentary work with occasional fine and gross manipulation and handling). The ALJ also failed to consider the consistency of Dr. Morgan's opinion with the record in light of NCV and EMG findings of subacute lumbar radiculitis and moderate-to-severe sensory and motor polyneuropathy in the nerves of Plaintiff's bilateral feet (Tr. at 562) and

---

[7] This undersigned is not suggesting that the supportability factor weighs in favor of according greater weight to Dr. Morgan's opinion, but is indicating that the ALJ appears to have ignored a significant portion of the opinion in evaluating its supportability.

moderate motor and sensory polyneuropathy in the nerves of his bilateral hands and wrists (Tr. at 568).

It does not appear that the ALJ carefully considered or provided "good reasons" for her decision to give partial weight to Dr. Morgan's opinion. *See* 20 C.F.R. § 404.1527(c)(2) and § 416.927(c)(2); SSRs 96-2p and 96-5p. Therefore, the undersigned recommends the court find that substantial evidence does not support the ALJ's evaluation and weighing of Dr. Morgan's opinion.

## 2. Dr. Moss's Opinions

Dr. Moss completed a questionnaire on January 19, 2015. Tr. at 561. He indicated that it would be best to limit fine and gross manipulation and handling of objects to an occasional basis if Plaintiff attempted to work for eight hours per day on five days per week. *Id.* He specified that Plaintiff had been diagnosed with carpal tunnel syndrome based on NCV studies that showed moderate motor and sensory deficits in his wrists and hands. *Id.* He indicated Plaintiff had probably been so impaired for some time. *Id.*

On March 18, 2015, Dr. Moss completed a second questionnaire. Tr. at 621. He indicated Plaintiff could engage in no more than sedentary work and repeated the same restrictions and explanations he indicated in the first questionnaire. *See id.*

Plaintiff argues that the consistency between Dr. Morgan's and Dr. Moss's opinions entitles both to greater weight. [ECF No. 11 at 17]. He maintains that his abilities to care for his personal needs and to provide care for his children does not conflict with the limitations Dr. Moss indicated. *Id.* at 17–18.

The Commissioner argues the ALJ properly gave only partial weight to Dr. Moss's opinion because it was inconsistent with Plaintiff's abilities to perform nearly all activities of daily living and to care for his sons. [ECF No. 12 at 11–13].

The ALJ considered Dr. Moss's opinion, but gave it "partial weight." Tr. at 114. He found it was inconsistent with records that showed Plaintiff had the ability to perform "nearly all activities of daily living including dressing and bathing" and was "capable of taking care of his two sons, one of whom has special needs." Tr. at 114–15.

The ALJ's explanation for his decision to give partial weight to Dr. Moss's opinion does not reflect consideration of all the relevant factors in 20 C.F.R. § 404.1527(c) and 416.927(c). The ALJ did not consider the examining relationship between Plaintiff and Dr. Moss or the supportability of Dr. Moss's opinion in the NCV and EMG tests he administered. *See* Tr. at 562 and 568. The ALJ found that Dr. Moss's opinion was inconsistent with Plaintiff's abilities to care for his personal needs and for his two sons, but he did not explain how limitations to sedentary work and only occasional use of the bilateral hands for gross and fine manipulation during an eight-hour workday conflicted with these abilities. *See* Tr. at 114–15. He failed to consider that Dr. Moss and Dr. Morgan indicated similar restrictions and that both based the restrictions on findings of lower extremity polyneuropathy and upper extremity carpal tunnel syndrome. *See* Tr. at 561, 575, and 621.

In light of the aforementioned deficiencies, the ALJ did not carefully consider and evaluate Dr. Moss's opinion in accordance with the provisions of 20 C.F.R. § 404.1527(c) and 416.927(c) and SSR 96-5p. Therefore, the undersigned recommends the

court find that substantial evidence does not support the ALJ's decision to accord partial weight to Dr. Moss's opinion.

### 3. State Agency Consultants' Opinions

On April 17, 2013, state agency medical consultant Hugh Clarke, M.D., assessed Plaintiff's physical RFC as follows: occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for a total of about six hours in an eight-hour workday; sit for a total of about six hours in an eight-hour workday; frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; and avoid concentrated exposure to hazards. Tr. at 171–73.

Plaintiff argues that because the ALJ gave only partial weight to the state agency consultant's opinions, she failed to point to any medical opinions that contradicted those of Drs. Morgan and Moss. [ECF No. 11 at 18]. The Commissioner argues the ALJ did not discount any of the opinion evidence, but rather credited the portions of the medical opinions that were supported by the medical evidence in her RFC assessment. [ECF No. 12 at 13–14].

ALJs are required to consider opinions from state agency medical and psychological consultants, unless they accord controlling weight to a treating source's medical opinion. 20 C.F.R. § 404.1527(e) and 416.927(e). They are not required to adopt findings from state agency consultants, but they must consider their findings in light of the relevant factors in 20 C.F.R. § 404.1527 and § 416.927. 20 C.F.R. § 404.1513(a) and 416.913(a). "Because state agency medical and psychological consultants . . . are experts in the Social Security disability programs," ALJ's must "consider their findings of fact

about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists." SSR 96-6p, 1996 WL 374180, at *2 (1996).

The ALJ stated she gave only "partial weight" to Dr. Clarke's opinion because he did "not fully consider the claimant's subjective complaints regarding his symptoms." Tr. at 115. She acknowledged Dr. Clarke's status as a state agency consultant. *See id.* Thus, it appears the ALJ considered the relevant factors in 20 C.F.R. § 404.1527(c) and 416.927(c) in assigning partial weight to the opinion.

To the extent that Plaintiff argues the ALJ cannot reject all of the medical opinions of record, the undersigned notes that she did not reject all the opinions, but instead gave partial weight to each one. *See* Tr. at 114–15. When the record contains conflicting evidence, the ALJ is required to resolve the conflict. *Toney v. Shalala*, 35 F.3d 557 (Table), 1994 WL 464427, at *3 (4th Cir. 1994), citing *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). To that end, the ALJ is not required to accept or reject a medical opinion in its entirety and may give great weight to those portions of medical opinions that are supported by the record and no weight to those portions that are unsupported. *Cf. Tanner v. Commissioner of Social Sec.*, 602 F. App'x 95, 100 (4th Cir. 2015) (per curiam) (finding ALJ's failure to expressly assign weight to medical opinion was harmless error because it was clear that he accepted most of the physician's findings). The ALJ is ultimately responsible for making the decision about whether a claimant meets the statutory definition of disability. *See* 20 C.F.R. § 404.1527(d) and 416.927(d).

In the instant case, the ALJ accorded partial weight to the three medical opinions of record. *See* Tr. at 114 and 115. The partial weight she gave to Dr. Clarke's opinion appears to be reflected in her RFC findings that Plaintiff could sit, stand, and/or walk for six hours during an eight hour workday and should avoid concentrated exposure to hazards. *Compare* Tr. at 112, with Tr. at 171–73. However, a comparison of the assessed RFC and the opinions from Drs. Morgan and Moss does not reflect her accordance of partial weight. *Compare* Tr. at 112 (finding Plaintiff had the RFC to perform light work that required she perform light work; sit, stand, and or walk for six hours in an eight-hour workday; stoop; and frequently perform fine and gross manipulations with his left hand), *with* Tr. at 561 (stating Plaintiff should limit fine and gross manipulation to occasional during an eight-hour workday), 575 (providing Plaintiff could perform no more than sedentary work; was unable to bend, lift, or stoop; and would be limited to occasional gross and fine manipulation), and 621 (indicating Plaintiff was limited to sedentary work with occasional fine and gross manipulation and handling). Thus, the ALJ's decision is not sufficiently specific to make clear to the court how she credited the "partial weight" she accorded to Plaintiff's physicians' opinions. *See* SSR 96-2p, 1996 WL 374188, at *5 (1996). Although the ALJ did not err in according partial weight to multiple medical opinions, her decision is not supported by substantial evidence in the absence of an explanation as to how the partial weight she purported to give to the opinions was reflected in her assessment of Plaintiff's RFC.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

Shiva V. Hodges

May 23, 2017                                    Shiva V. Hodges
Columbia, South Carolina                       United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).